United States District Court
Southern District of Texas
**ENTERED**
September 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| THC HOUSTON LLC, *et al*, | § § § § § § § § § § § § | CIVIL ACTION NO 4:23-cv-02178 |
| Plaintiffs, | | |
| vs. | | JUDGE CHARLES ESKRIDGE |
| BLUE CROSS AND BLUE SHIELD OF ALABAMA, | | |
| Defendant. | | |

OPINION AND ORDER GRANTING IN PART
MOTION FOR JUDGMENT ON THE PLEADINGS

Pending is a motion by Defendant Blue Cross Blue Shield of Alabama for judgment on the pleadings, arguing that all claims brought by Plaintiffs are preempted by the Employee Retirement Income Security Act. Dkt 16.

The motion is granted as to the contract claims (Counts I & IV), which are preempted. It is denied as to the fraud claims (Counts II & III), which are not.

1. Background

Plaintiffs are four long-term acute-care hospitals located in Texas, Tennessee, and Florida. See Dkt 1-4 at 3–4. They are each listed as *doing business as* Kindred and will be collectively referred to as such.

Kindred provided medical care to five patients at issue in this action, identified as J.B., A.S., T.S., C.M., and J.L. Dkt 1-4 at ¶¶13–40. Each participated in an employer-sponsored health benefit plan, with Defendant Blue Cross Blue Shield of Alabama being the claims administrator for each of those plans. Dkt 16-1 at 3.

BCBSAL participates in what's known as Blue Cross and Blue Shield's national *Blue Card Program*. Dkts 1-4 at ¶12 & 16-1 at 3. Under this program, the "home plan" (being BCBSAL) has agreements with other Blue Cross plans across the country so that when plan participants are out of state, they can access the contract rates negotiated with local plans. Dkt 1-4 at ¶12 & 16-1 at 3. The provider bills directly to the "host plan" where the provider is located. The host plan then provides the information to the home plan, which adjudicates the claim and determines how much should be paid. Dkt 16-1 at 3–4.

The five patients were BCBSAL members who received treatment in other states while covered via the Blue Card Program. Kindred alleges that BCBSAL was thus "obligated to make payment to Kindred for care and treatment provided to its Insureds at issue here under the terms of the contracts between Kindred and the relevant local plans," and that it failed to do so. Dkt 1-4 at ¶12.

Patients J.B., A.S., and T.S. share the same fact pattern pertaining to what's referred to as *medical necessity patients*. BCBSAL represented to Kindred that each of these three was eligible for coverage prior to Kindred admitting them. Instead, BCBSAL ultimately refused to pay for a portion of their treatment upon assertion that the care wasn't medically necessary. Kindred disputes that assertion as to medical necessity and seeks damages for the care it provided without compensation to J.B., A.S., and T.S. Dkt 1-4 at ¶¶13–17, 18–23, 24–29.

Patients C.M. and J.L. share a similar fact pattern pertaining to what's referred to as *Tier 3 patients*. C.M. was covered by a different insurer when she was initially admitted to Kindred Bay Area. When that prior coverage terminated, Kindred contacted BCBSAL as C.M.'s new insurer, which confirmed coverage. But BCBSAL later advised that, because Kindred Bay Area is a "Tier 3 facility" under C.M.'s plan, her care at Kindred wouldn't be covered unless she had been admitted from an emergency room. As to J.L., BCBSAL represented that he was eligible

for coverage prior to admission to Kindred Bay Care. But BCBSAL later refused to pay for care because Kindred Bay Area is a "Tier 3 facility." Kindred disputes assertion that the tier system applied to these stays in Kindred Bay Area, as information on the BCBSAL website indicates that the tiering system only applies in Alabama. See Dkt 1-4 at ¶31. It thus seeks damages for the care it provided without compensation to C.M. and J.L. Dkt 1-4 at ¶¶29–40.

Kindred filed this lawsuit alleging claims under state law. Dkt 1-4. Counts I and IV assert breach of contract and tortious interference with contract. Id at ¶¶41–46, 67–74. Counts II and III assert fraudulent misrepresentation and fraud by non-disclosure. Id at ¶¶47–55, 56–66.

Pending is a motion by BCBSAL for judgment on the pleadings that ERISA preempts all of these state-law claims. Dkt 16.

### 2. Legal standard

A motion for judgment on the pleadings proceeds under Rule 12(c) of the Federal Rules of Civil Procedure. It states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

A reviewing court evaluates a 12(c) motion using the same standard as a 12(b)(6) motion to dismiss for failure to state a claim. See *Gentilello v. Rege*, 627 F3d 540, 543-44 (5th Cir 2010). The complaint must thus contain enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Corp v Twombly*, 550 US 544, 570 (2007). A claim has *facial plausibility* "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v Iqbal*, 556 US 662, 678 (2009), citing *Twombly*, 550 US at 556.

### 3. Analysis

BCBSAL seeks judgment on the pleadings as to each of Kindred's claims. Its main assertion is that express preemption under ERISA pertains. See Dkt 16-1 at 6, 7–8. It also briefly makes very brief assertion as to conflict

3

preemption. *See id* at 6, 9. But this latter will be disregarded as BCBSAL sponsors no statement of controlling standards or any sustained analysis. See also Dkt 17 at 8 (Kindred response only as to express preemption, given its view that both types of preemption are "same concept" for present purposes).

The Fifth Circuit holds that express preemption under ERISA applies if "'(1) the state law claims address an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claims directly affect the relationships among traditional ERISA entities—the employer, the plan and its fiduciaries, and the participants and beneficiaries.'" *Access Mediquip LLC v UnitedHealthcare Insurance Co*, 662 F3d 376, 382 (5th Cir 2011), quoting *Memorial Hospital System v Northbrook life Insurance Co*, 904 F2d 236, 245 (5th Cir 1990); see 29 USC §1144(a) (ERISA preemption clause).

a. Contract claims

*As to the first element,* the contract claims plainly address the right to receive benefits under the terms of an ERISA plan.

The Fifth Circuit held in *Lone Star OB/GYN v Aetna Health Inc* that state-law claims are preempted if they "require any kind of benefit determination under the ERISA plan." 579 F3d 525, 530 (5th Cir 2009). Whether the contract claims asserted here are preempted depends, then, on whether the payments sought relate back to the terms set forth in the BCBSAL ERISA plans at issue. The allegations make quite clear that they do. Kindred alleges that there was an implied contract with BCBSAL for it "to pay Kindred for care and treatment provided to the Insureds at the rate set forth in Kindred's contracts with the local plan." Dkt 1-4 at ¶42. As to tortious interference, Kindred alleges that "BCBSAL interfered with Kindred's contractual relationships with [host plans] by, among other things, causing Kindred to be paid less than the amount due and owing under the payment terms of those contracts for care and treatment provided to the Insureds." Dkt 1-4 at ¶70.

4

This means that, at base, the claims will require determination of whether care was of medical necessity (with respect to J.B., A.S., and T.S.) or properly covered at a Tier 3 facility location (with respect to C.M. and J.L.) under the terms of the subject ERISA plan. This is the type of inquiry that the Fifth Circuit has found to address the right to receive benefits under the terms of an ERISA plan, thus favoring preemption. Indeed, it determined in *Lone Star OB/GYN* that "what is 'medically necessary' or a 'Covered Service'" under the terms of a plan falls within ERISA. 579 F3d at 531.

*As to the second element,* the contract claims directly affect the relationship between traditional ERISA entities—the plan and the participants in the plan who are represented by Kindred.

BCBSAL argues that Kindred acts for the patient participants in the ERISA plans because its claims seek benefits under the ERISA plans. Dkt 16-1 at 8. It thus argues that the second element is met because Kindred stands in the shoes of the five patients whose plans are governed by ERISA. Ibid; see also *Memorial Hospital System*, 904 F2d at 250 (stating how hospital provider bringing state law claim "stands in the shoes of" beneficiary). Kindred counters that it's not asserting these claims as an assignee of the patients' benefits under the ERISA plans, but rather "in its own capacity as a third-party provider." Dkt 17 at 14.

The Fifth Circuit holds that when hospitals bring state-law breach-of-contract claims to recover payment for treatment given to patients with plans governed by ERISA, they are indeed assignees for the purposes of ERISA preemption. See *Transitional Hospitals Corp v Blue Cross and Blue Shield of Texas, Inc*, 164 F3d 952, 954 (5th Cir 1999). That's precisely what Kindred is seeking here—to recover payment for benefits given to patients covered by BCBSAL's ERISA plans. See Dkt 1-4 at ¶¶3, 32, 37. And even when paired with allegations of misrepresentation, "breach of contract claims based on defendants' alleged failure to pay the full amount of benefits due under the

5

terms of the policy are preempted." *Transitional Hospitals*, 164 F3d at 955.

Because Kindred is seeking to recover benefits under the BCBSAL ERISA plans owed to plan participants who assigned their benefits to Kindred, the contract claims directly affect the relationship between the plan and its participants.

In sum, both elements of the express-preemption analysis are met with respect to the contract claims. Express preemption thus pertains, and those claims will be dismissed.

### b. Fraud claims

*As to the first element,* the express preemption analysis is markedly different, as Fifth Circuit precedent makes clear that fraud claims of the sort alleged here aren't preempted.

For instance, *Access Mediquip* addressed a misrepresentation claim relating to communications from an ERISA plan administrator to a medical provider concerning the scope of a plan's coverage. The Fifth Circuit determined that the claim wasn't preempted by ERISA, reasoning that state laws governing fraud claims "do not purport to regulate what benefits [an insurer offers] to the beneficiaries of its ERISA plans, but rather what representations it makes to third parties about the extent to which it will pay for their services." 622 F3d at 385. And it explained:

> If the plans provide less coverage than [ERISA administrator's] agents indicated, [provider] must still prove that it was reasonable to rely on their statements as representations of how much and under what terms [provider] could expect to be paid. If the plans do provide the same level of coverage [ERISA administrator] indicated, [provider] may nevertheless seek to prove its misrepresentation claims by showing that [ERISA administrator's]

6

> statements regarding coverage, while accurate, were nevertheless misleading because [ERISA administrator's] agents omitted to mention that, covered or not, [provider's] services would not be reimbursed.

Ibid. It was thus "immaterial" whether the insurer's statements accurately described the terms of the ERISA, given that analysis turned on representation by the insurer to the provider as to how much would be paid. Ibid.

In short, state-law fraud claims tied to representations made by an insurer (here, BCBSAL) to a third-party medical provider (here, Kindred) aren't part of the terms of the ERISA plan, and so aren't preempted. See *Transitional Hospitals*, 164 F3d at 955 (holding that ERISA doesn't preempt state law causes of action based on misrepresentations regarding scope of insured's coverage); *Memorial Hospital System*, 904 F2d at 246 (no express preemption of negligent misrepresentation claim where medical provider received confirmation from insurer that expected healthcare costs would be covered).

*As to the second element,* it needn't be addressed, given Fifth Circuit precedent that the first element doesn't apply to Counts II and III for fraudulent misrepresentation and fraud by non-disclosure.

### 4. Conclusion

The motion by Blue Cross Blue Shield of Alabama for judgment on the pleadings is GRANTED IN PART AND DENIED in part. Dkt 16.

It is GRANTED as to the contract claims, which are preempted by the Employee Retirement Income Security Act. Counts I and IV are DISMISSED WITH PREJUDICE.

It is DENIED as to the fraud claims. Counts II and III will proceed.

So ordered.

Signed on September 30, 2024, at Houston, Texas.

_____
Hon. Charles Eskridge
United States District Judge